IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 22, 2007

Charles R. Fulbruge III
Clerk

No. 06-30783

RICKY HEBERT,

Plaintiff-Appellee,

v.

WEEKS MARINE, INC. ;
ATLANTIC SOUNDING CO., INC.,

Defendants-Appellants.

Appeal from the United States District Court
for the Western District of Louisiana

Before GARWOOD, JOLLY, and STEWART, Circuit Judges.

PER CURIAM:[*]

Defendants-Appellants Weeks Marine, Inc. and Atlantic Sounding, Co., Inc. ("Weeks-Atlantic") appeal the district court's grant of summary judgment to Ricky Hebert ("Hebert"). The district court granted summary judgment, finding that Hebert was a seaman for purposes of the Jones Act at the time he was injured. We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I.

Hebert was employed by Weeks-Atlantic as a welder from July, 2002, until March, 2004. During his tenure he was assigned to a number of vessels owned and operated by Weeks-Atlantic, including the BTD-2 and the R.S. WEEKS.

On September 2, 2003, appellee was transferred from his assignment on the BTD-2 to the R.S. WEEKS in order to assist the captain of that ship, Ed Snover, who was in need of a welder. After a dispute with Snover, Hebert was fired on September 22, 2003. That day Snover filed an Employment Status Change Authorization form ("Status Change form") indicating that Hebert had been fired for insubordination and recommending that he not be rehired. After hearing of Hebert's dismissal, Hebert's supervisor from the BTD-2, Captain Clyde Wyble, contacted Snover and requested that he be allowed to change the paperwork so that Hebert could be rehired. On October 2, 2003, a second Status Change form was filed and marked "Corrected Copy." The Corrected Copy indicated that Hebert was not fired but laid off, and recommended for rehire.

On October 4, 2003, a third Status Change form was filed, rehiring Hebert and assigning him to the BTD-2, under Captain Wyble; Hebert returned to work that day. At that time, the BTD-2 was tied up at Weeks-Atlantic's Houma shipyard awaiting the start of an assignment. On October 8, 2003, Hebert was injured while working in the Houma shipyard when his shoulder was crushed between two pipes. After receiving treatment for his injury, Hebert returned to work in November 2003; he was immediately sent to work on the BTD-2, then on assignment in navigable waters.

On September 9, 2004, Hebert filed suit against Weeks-Atlantic under the Jones Act alleging damages caused by his injuries sustained on October 8, 2003. Both parties filed motions for summary judgment on the issue of whether Hebert was a Jones Act seaman at the time of his injury. On March 13, 2006, the

district court entered a memorandum ruling and judgment finding that Hebert was a seaman.  Weeks-Atlantic appeals this ruling.

II.

We review the district court's grant of summary judgment de novo.  Boyle v. Pool Offshore Co., 893 F.2d 713, 715 (5th Cir. 1990).  The determination of seaman status is a mixed question of fact and law.  Harbor Tug and Barge Co. v. Papai, 520 U.S. 548 (1997).  In determining seaman status, a jury should consider all relevant circumstances. Chandris, Inc. v. Latsis, 515 U.S. 347, 348 (1995).  However, summary judgment is proper when "the facts and the law reasonably support only one conclusion."  Boyle, 893 F.2d at 716 (quoting McDermott Int'l. v. Wilander, 498 U.S. 337 (1991)).

The sole issue before this court is whether the district court erred in granting summary judgment in favor of Hebert, finding that Hebert was a seaman at the time of his injury.  Weeks-Atlantic contends that Hebert was not a Jones Act seaman because he was working on land in the Houma shipyard at the time of his injury.  Weeks-Atlantic argues that at the time of his injury, Hebert had been given a new assignment with new duties and that this new assignment had no connection to any vessel in navigation.  Hebert asserts that at the time of his injury he was assigned to the BTD-2 and was temporarily working in the Houma yard while waiting for the vessel's deployment.  He alleges that working in shipyards while awaiting an offshore deployment was common practice at Weeks-Atlantic.

It is well established that a seaman does not lose seaman status merely because his duties take him ashore.  Chandris, 515 U.S. at 361.  As a general rule of thumb, an employee "who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act."  Id. at 371.  In Chandris, the Court stated: "[i]n evaluating the employment-related connection of a maritime worker to a vessel in navigation,

courts should not employ "a 'snapshot' test for seaman status, inspecting only the situation as it exists at the instant of injury; a more enduring relationship is contemplated in the jurisprudence." Id. at 363 (citations omitted).

Weeks-Atlantic seeks to have this court focus on a five-day period (October 4-October 8, 2003) to determine whether Hebert had seaman status at the time of his injury. Weeks-Atlantic argues that neither Hebert's work history prior to his injury nor his work assignments after his injury should be taken into account in determining whether Hebert was a Jones Act seaman because ,at the time of Hebert's accident, he was working on land in the Houma shipyard and had received a new assignment with different duties. Weeks-Atlantic further urges this court to disregard all of the paperwork and deposition testimony to the contrary, and find that at the time of Hebert's injury, he was assigned to the Houma shipyard, not the BTD-2.

It is uncontested that Hebert was physically working in the Houma shipyard at the time of his injury; however, Hebert introduced evidence establishing that approximately 75% of his time was spent on vessels in navigable waters during his tenure at Weeks -Atlantic.[1] Further, Weeks-Atlantic's contention that Hebert had a new assignment with new duties at the time of his injury is not supported by the undisputed facts in this case. The Status Change forms submitted by both Weeks-Atlantic and Hebert indicate that Hebert was transferred from one vessel to another vessel, the R.S. WEEKS to the BTD-2, not from a vessel to a land-based job as argued by Weeks-Atlantic. In addition, these forms also show that Hebert was a welder on both the R.S. WEEKS and the BTD-2, and thus, there was no change in his duties from his old assignment to his new one. The deposition testimony of two Weeks-Atlantic

---

[1] Based on work records obtained from Weeks-Atlantic, Hebert calculated that of the 371 days that he worked for Weeks-Atlantic, 318 ½ were spent on vessels in navigable waters. Weeks-Atlantic does not dispute this figure, rather they maintain that the relevant work period for determining Hebert's seaman status is October 4-October 8, 2003.

employees further establish that at the time of Hebert's injury, he was assigned to the BTD-2 dredging division. Weeks-Atlantic has therefore not succeeded in proving that Hebert was reassigned and given a new assignment with new duties. As the law does not favor seamen "walking into and out of [Jones Act] coverage in the course of [their] regular duties," Chandris, 515 U.S. at 363, we conclude that the district court did not err in granting summary judgment in favor of Hebert on the issue of seaman status.

## III.

For the foregoing reason, we AFFIRM.